Good afternoon. Carolyn Phillips appearing on behalf of the appellant Ashmindar Singh. This court has identified two issues on appeal. The first having to do with whether or not Mr. Singh's joinder with his co-defendants resulted in a deprivation of due process. And I can address that first. That was also the issue in which the respondents filed a letter brief. First of all, as the court is well aware, Mr. Singh was one of six defendants. He was tried on one with one victim. We believe it was seven counts. There were other defendants who were also charged in that particular count, but there was a string or a series of rapes, kidnapping, and other sexual assaults that occurred within a period, I think, of about a year, and those same defendants were tried with Mr. Singh. Now the question is whether or not there was a violation. Did Mr. Singh actually obtain a fair trial being tried with all of these other defendants, with all the evidence coming in regarding victims that had nothing to do with the one victim that Mr. Singh was charged with? In this case, do you agree that AEDPA is the standard of review for us? Say that again, I'm sorry. Are we under AEDPA in this case? It appears that his petition was filed within AEDPA. In terms of... So there was no evidentiary hearing regarding... Well, let me just ask the next follow-on question then. We have to, under AEDPA, we're looking at whether there is a violation of clearly established Supreme Court precedent. And are you aware of any clearly established Supreme Court precedent on the issue of joinder? The cases that are cited in the brief on behalf of Mr. Singh go back to the general proposition that a criminal defendant is entitled to a fair trial, and that's part of what the due process of the Constitution requires. Specifically, the United States Supreme Court has not issued a decision specifically on misjoinder. However, in the Ninth Circuit up until... With United States v. Lane, the Ninth Circuit had interpreted a footnote to allow petitioners to challenge convictions under due process for misjoinder. When that misjoinder rose to the level of a constitutional violation. Before AEDPA. Yes. Right. However, the underlying premise or principles of the due process clause would still allow for a petitioner to object to misjoinder as a violation of due process. I understand the limitations of AEDPA. Well, there's a difference between being allowed to raise an issue and potentially being successful in the state court proceedings and how we are supposed to review what the state court does. In other words, you can make the argument in some cases it might succeed, in other cases not. But then our question is, in the cases in which it didn't succeed, is that an unreasonable application of Supreme Court law? So if there's room for argument, it doesn't mean you can't make the argument and sometimes succeed. It just constrains how we deal with it. That's my concern. I think with the Ninth Circuit, again, going back to the United States v. Lane, the footnote that allowed for a finding of violation of due process with a misjoinder. The Ninth Circuit then changed its position and clearly stated in Collins v. Reynolds that this was a dicta and that it was not, that position was not a reflection of clearly defined federal law. However, it's interesting to note that in a case cited by the respondents, which is Carey v. Mosleyden, that Judge Justice Stevens noted in his dissent in that case that the whole theory that you can't rely on dicta to support a challenge under a federal habeas petition actually came from dicta itself, that Justice O'Connor in Williams v. Taylor had made this conclusion, that clearly defined federal law excludes dicta. All that to say, we are left here in the law as it exists at this moment in the Ninth Circuit, is that the United States v. Lane doesn't allow for petitioners to declare that there is clearly defined federal law on the issue of misjoinder in the due process. The second issue has to do with whether or not there is ineffective assistance of counsel. For a trial court, for the trial counsel's refusal to accept the trial court's offer to sever Mr. Singh's case from the remaining defendants. The prior decisions of both the Third District Court of Appeal on direct appeal and the Superior Court in review of a state habeas found that the trial counsel's behavior in this respect was very confusing. However, the Third District Court of Appeal determined that the decision by the trial counsel to refuse this offer of severance was an indication that there was some strategy involved. That trial counsel actually did not want to sever Mr. Singh's case from the remaining defendants to take advantage of DNA expert counsel. What we've tried to raise in our briefing is that there's no factual basis for that conclusion by the Third District Court of Appeal. The mere fact that trial counsel rejected the offer of severance was based, and it seems to be clear from the filings of the trial counsel and his motions for severance, was based on a misunderstanding of whether or not double jeopardy had attached at the time that the trial court offered to sever Mr. Singh's case from the rest of the defendants. There's something, I lost count of the number of times this motion was filed. Yes. And she raised the argument for him, the Ortiz case, and she pointed this out. And there was a difference of opinion among the three attorneys at that point. And one of them ultimately chose to not sever. And she let them think about it overnight. It just seemed to be exceptional, the lengths that the trial court went to, to let him make this decision very, very carefully. And then, of course, there's the on record colloquy the next morning. I'm curious, but I couldn't find in the record, I think it's Nalesh Prasad, there were two Mr. Prasads. Yes. The lawyer for one of them chose to remain in the case, chose not to. And I just wonder if you have any other information about that, and specifically, why wouldn't I just decide, conclude on the basis of the fact that there was a difference of opinion among those three attorneys, that that in and of itself indicates there was a strategy call going on? Well, to answer the last part of your question first, I think it's clear from the subsequent filings for severance by Mr. Singh's trial counsel, that Mr. Singh's trial counsel had a misunderstanding about what the court had asked the defendants to accept. And that was, if you accept severance, then you must waive double jeopardy, and you must waive your right to a speedy trial. And he, trial counsel specifically sets that forth in one of his later severance motions, is that it was wrong for the trial court to put this offer in the context of Mr. Singh having to waive certain constitutional rights. At the same time, what he failed, trial counsel failed to note, was the fact that there was no double jeopardy issue. So in that particular question- But it wasn't just double jeopardy, right? It was double jeopardy and speedy trial. And if he had some theory that he was going to have a winning appellate point, maybe he had that theory. I don't know why he did what he did. I know that she gave him a lot of time to think about it. Yes, but I think what's important to note is the fact that he, the trial counsel, was working under an erroneous notion of what he was being asked to do. In accepting the offer for severance, that Mr. Singh would then be waiving part of his constitutional rights. Just because there's a difference of opinion, each of the attorneys are looking after the best benefit of their clients. And here we have trial counsel who had filed, as you noted, many, many, many motions to sever Mr. Singh from the remaining defendants. But even if it's objectively unreasonable, the decision the counsel made, how can you show prejudice when the jury carefully parsed all the different counts in reaching their various verdicts? Well, I understand that works against Mr. Singh. However, two of the counts that Mr. Singh was not convicted of, one having to do with a robbery, and I think the other had to do with an enhancement with a weapon. For a deadly weapon, yeah. Right. One of the other co-defendants was found guilty. Mr., I think it's Narayan, had a separate trial, not a separate trial, but a separate jury. And it was played during, to that jury, that he had already admitted those things. He admitted to the robbery and he had admitted to carrying the weapon. So that's, it wasn't like the jury wasn't parsing out Mr. Singh from those particular challenges when you had a defendant who actually admitted to those things. But they actually convicted Mr. Deo and Mr. Narayan of the robbery. Yes, that's true, yes. And in terms of Mr. Singh's defense, his defense was that this was a consensual act of trading sex for drugs. And what we have then is a wave of evidence presented by the co-defendants that this was a series of rapes and sexual assaults. They were all very similar. The district attorney even noted in supporting the, Jennifer S, who was the victim in Mr. Singh's case, that her story was very similar to the rest of the victim's stories. Where it occurred, how many men were involved, so that Mr. Singh's defense of consent was completely obliterated by the fact that it was presented along with all the other series of charges against different defendants. Thank you, Counselor. You've exceeded your time, but we'll give you a minute for rebuttal. Thank you. And we'll hear from the state. May it please the court. Daniel Bernstein, Deputy Attorney General, appearing on behalf of the respondent. In Collins versus Runnels, this court held that the Supreme Court has never clearly established a constitutional rule binding on states for determining whether there has been a joinder in violation of the defendant's due process rights. That holding in Collins should be the beginning and the end of the discussion of petitioner's due process claim. And as the United States Supreme Court recently made clear in Marshall versus Rogers, which I cited in my 28-J letter, a circuit court can't rely on its own precedence for fleshing out the rule of constitutional law that has never been defined by the US Supreme Court. So this is an AEDPA case. Counsel acknowledged that there was a decision on the merits in the state court, so we are under the standard of AEDPA. And there being no clearly established United States Supreme Court rule, there can be no relief for the due process claim. Unless there are any questions on that, I'd like to move to the IAC claim. Again, the California Court of Appeal issued a merits decision on the claim of ineffective assistance of counsel. And under AEDPA, we have double deference. We have the deference that's normally accorded under Strickland versus Washington, and then we have another layer of deference under the AEDPA. So, to prevail, petitioner would have to show that the state court had no reason to find that trial counsel had some strategic reason to want to remain in the case with the co-defendants. I find this a difficult part of the case, because it's hard for, certainly there was plenty of opportunity to strategize and think about this decision. But I have a hard time seeing what the strategy would be in this circumstance. The strategy would be, and the trial court put this on the record at one point when she was venting some frustration. That in chambers, trial counsel for Mr. Singh had said that he saw some advantages of having multiple DNA expert counsel raising questions about the DNA evidence in this case. Yes, but he had his own DNA counsel, right? He had separate DNA counsel in this case. Well, the separate DNA counsel included Bob Blazer, who is a nationally recognized expert. They were citing all kinds of experts and technical reasons why the DNA evidence was not reliable. But his defense wasn't a DNA based defense, anyway. Well, he was trying to discredit the DNA evidence, that's why he had DNA counsel. Right, but his primary defense wasn't about DNA, it was about consent, which it seems to me would have been a far stronger defense. Far stronger defense had he been tried separately. And you've conceded in your briefing, as I recall, that the evidence would not have been cross admissible. Had he been tried alone, this whole series of rapes and so forth would not have come in. So it's hard for me to see what the strategy, a rational strategy would be. Well, a rational strategy also could have been that he had three other attorneys who were cross-examining the complaining witness, the victim, Jennifer. And so he would benefit from their, any inroads they made on impeaching her credibility. As far as the consent defense, I don't think that, I think that the state court could have reasonably determined that, and I think they did say this, that a consent defense would not have fared any better had he been tried independently. And there's multiple reasons for that. Number one, he was charged in, I think, five of the seven counts with acting in concert. That means that evidence pertaining to the other defendants would have been admitted. About that victim only, though. At that victim only. But he would have had to be in the position to argue that this victim, this prostitute engaged in consensual sex with four other people at the same time for a small amount of drugs, which there was no evidence that, no evidence that was introduced in his trial to support that consent defense. And there's no indication in the habeas pleadings that any other evidence would have been forthcoming in a separate trial. So that evidence was, I mean, that defense was implausible on its face, even in a separate trial. So I think on that basis, and I think again, the third district court of appeals, the state court of appeals, cited that as a reason why counsel's decision might have been strategic or objectively reasonable. It's concerning to me, though, that we can hypothesize some reasons, and I agree with Judge Graber, it's a stretch to figure out how this could possibly be of strategic advantage to this defendant. But it is concerning to me that while we sit now in 2020 hindsight and try to dream up those reasons, we also have a transcript that indicates, as opposing counsel said, that some of the articulated reasons, the primary reason defense counsel articulated was wrong. Well, there's also some reason to think that counsel was being disingenuous, and the trial court used that word. It appears he was trying to have his cake and eat it too. He was trying to get this case not only severed, but dismissed at the same time. And to the extent that he was unsuccessful in that, he may have, and there's reason to think, he thought the next best option would be to be tried jointly and take advantage of the other co-defendants' counsels to impeach the witness' credibility and to cast more doubt on the DNA evidence. Is there any indication that he recognized that the importance of the Ortiz case for the first or second motions that he filed that were denied, any indication that he thought that he had reversible error? Before the trial court brought up Ortiz? Right. No, he apparently missed it. As did the other defendants. But that was the third motion, or third or fourth, I've lost count. I think I counted nine, or something like that. And I think when she raised the issue of Ortiz, it was after openings, I think? Right. And it was the third or fourth time. So my question is, any indication he thought that he hadn't missed it earlier? No, no. I think he realized he blew it. The other counsel realized that they missed it also. One took advantage of the severance offer, two declined to. The other co-defendant, Nalesh Prasad, who also was tried jointly, he was convicted on, I think, seven of the 13 counts that he faced. So it was a split decision on, as well for him as well as Mr. Singh. May I ask you, forgive me for interrupting, but may I ask you the same question I asked opposing counsel. Mr. Prasad's lawyer indicated that he had filed a pleading the next morning after this in-chambers conference, indicating his reasons for wanting to not sever. But that's not in the record. I couldn't find it anywhere. Do we have that? No, I don't. I don't. I would also like to just take a minute to talk about prejudice. Because, of course, under Strickland, the defendant, the appellant, must show both deficient performance and prejudice. And here, even if he could show that trial counsel was objectively unreasonable in not taking advantage of the trial court's offer to sever under Ortiz, he cannot establish prejudice, largely for the reasons he couldn't make a due process violation if it were considered as a matter of first impression, like the state court decided. Although there were other defendants and other victims that the jury was exposed to, they were all distinct as to time and place. The trial court repeatedly instructed the jurors to consider the evidence against each defendant only as the evidence came in that they were charged with. And so there was no risk of, if the jury followed the instruction of them, holding the information and the other defendants against Mr. Singh. And also, the fact that the prosecutor mentioned in his closing argument that there were other incidents which were consistent with Jennifer's testimony, that was just a point to bolster his main argument that there was no consent here, that there was DNA from multiple perpetrators. But that cuts against your argument because if the main defense is consent and the prosecutor can argue that lack of consent is demonstrated by other victims, other places, other times, that have nothing to do with this defendant, it seems to cut exactly the opposite of your argument. Well, I think that's the best point that the defense can raise, that there was some crossover or spillover effect. But my point is that the prosecutor did not rely largely on that. The prosecutor relied mostly on saying that Jennifer was a credible witness, that there was no reason that she would have gone to the police to falsely report a gang rape when she had warrants out for her, that there was no reason to believe that this was a consensual act because there was DNA found from three perpetrators at the scene and there was no evidence to support the consent defense. So that was the thrust of his argument, that there was no consent here. And he bolstered that by saying that Jennifer's credibility is supported by the fact that it's consistent with the other victims. Thank you, counsel. Thank you. Ms. Phillips, you may have one minute for rebuttal if you'd like it. The only thing I would add to what the court has already noted is that the DNA counsel for Mr. Singh, his attorney O'Reilly, two of his letters to Mr. Singh following his conviction indicated that there was no interest on the part of Mr. O'Reilly to pursue a DNA defense before the notion of separating Mr. Singh from the rest of the defendants. That was their number one task. That was the most important thing. And that Mr. O'Reilly was very comfortable, this whole issue about whether or not it was a strategy decision to keep Mr. Singh in a trial with all of his co-defendants because they wanted to take advantage of the DNA experts. The fact is that Mr. O'Reilly felt comfortable presenting that defense on behalf of Mr. Singh and would not have chosen to do that before separating Mr. Singh from the rest of his co-defendants.  We appreciate the arguments of counsel. The case just argued is submitted.
judges: Tunheim, Graber, Christen